### GRIGGS v. MARTIN.

No. 5371.

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1936.

Dickson & Denny, of Shreveport, for appellant.

Garland & Johnston, of Shreveport, for appellee.

TALIAFERRO, Judge.

In this petitory action, plaintiff seeks to have herself recognized as owner and possession delivered to her of the following described parcel of land, alleged to be a part of the original home place of C. S. Croom and Margaret A. Croom, in section 25, township 20 north, range 16 west, now embraced within the limits of the town of Mooringsport, Caddo parish, La.:

"A tract of land in Section 25, Township 20 North, Range 16 West, Caddo Parish, Louisiana, lying between the north line of Acre Lot No. 5, in the town of Mooringsport and the south shore of Ferry Lake, and more accurately described as follows:

"Beginning at a point on the north line of said Acre Lot No. 5, a distance of 52 feet southwesterly from its northeast corner, run thence southwesterly along the north line of said Lot No. 5, a distance of 156 feet to its northwest corner, thence northwesterly on a production of the west line of said lot No. 5, 125 feet, more or less, to the 173.09 contour line of Ferry Lake, thence north 39° 53' east along said contour line 156 feet, thence southeasterly 130 feet more or less to place of beginning, together with all improvements thereon, and all water rights accruing thereto."

She deraigns title, relied upon to recover, back to 1840, when the entire tract was acquired from the United States.

Defendant admits he is in possession of the land and denies that plaintiff is the owner of it. He does not assert title in himself, however, and testified that he has none.

The lower court dismissed the suit and rejected plaintiff's demands. She has appealed.

The larger part of section 25, township 20 north, range 16 west, is embraced in a narrow tract of land of peninsular form projecting into Caddo Lake, formerly called Ferry Lake. In 1869, the joint owners of all of this section, excepting some five acres, partitioned it extrajudicially. In the process of cantling, six square one-acre lots were formed, consecutively numbered from west to east, facing northwesterly the lake, in front of which, along the lake bank, there was reserved, according to plat prepared at the time, a strip of land sufficiently wide for highway purposes.

The land herein sued for adjoins lot 5 on its westerly side, and covers, to the extent of its width, all the land in front of that lot reserved for the highway. Presumably, the highway as such has been abandoned. To whom it reverted is not raised in this case.

Plaintiff claims to have acquired title to the land involved herein by deed from James B. Stokley on December 5, 1935, in which the description, so far as pertinent, is as follows: "All of Acre Lot No. 6 (Acre Lot Jeter Survey) of the Town of Mooringsport, also a 52-foot strip of the northeast side of Acre Lot No. 5 and 52-foot strip lying along and adjoining the northeast side of Lot No. 6, containing One Decimal Forty-nine (1.49) acres; *also all the land facing the property just described and extending northwesterly to contour figures One Seventy-three Decimal naught nine (173.09) of Ferry Lake.*"

She relies upon that part of this description by us italicized as the basis of her title claim. However, it will be noted that this description nowhere refers to the lands and lots conveyed as being the C. S. and Margaret A. Croom home place. Testimony was offered and admitted to prove that the land in controversy once formed a part of the Croom home place, but, as stated before, plaintiff's deed does not refer to the parcels of land therein conveyed as constituting this place. And we do not think the descriptions therein can possibly be construed to include the land at issue. The blanket conveying clause definitely restricts its effect to "the land facing the property just described and extending northwesterly to contour figures 173.09 of Ferry Lake." The property *"just* described" is acre lot No. 6, plus a strip 52 feet wide, adjacent to its east side, and plus a strip 52 feet wide off of the east side of lot No. 5. Reference to the several plats in the record reveals that the land sued for has no line in common with that specifically described in plaintiff's deed. The two tracts have one common corner—the southeast of one and northwest of the other. The former does not "face" (adjoin) the latter to any extent. There is a strip of land intervening between the westerly line of lot 6 and the two 52-foot strips on either side, and the contour line, which is evidently included in plaintiff's deed, as it "faces" the main parcel definitely described and is northwesterly there-

from; but the land plaintiff claims herein is west of this intervening tract.

Having reached the conclusion that the deed relied upon by plaintiff to recover does not include the land in contest, we find it unnecessary to decide whether deeds antecedent to hers, mentioned in the petition, include same.

In a case of this character, where defendant admits he is without title, plaintiff is not bound to adduce evidence disclosing in him a perfect title, one good against the world, but to oust a defendant in peaceable possession, a plaintiff is required to exhibit some color of title. If this were not true, the rights and benefits flowing from possession, acquired and held by peaceful means, would be worth nothing. And since plaintiff has failed to prove any color of title to the land sued for, she should not be allowed to dispossess defendant.

We are of the opinion that the judgment appealed from is correct, and accordingly it is hereby affirmed.